UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRYAN NATHANIEL JOHNSON,

Plaintiff,

-against-

CAMERON GILES, ASYLUM RECORDS
LLC, DIPLOMATIC MAN, INC., and KILLA
CAM MUSIC,

Defendants.

┌──────────────────────────┐
│ USDC SDNY                │
│ DOCUMENT                 │
│ ELECTRONICALLY FILED     │
│ DOC #:_____  │
│ DATE FILED:__9/19/2024__ │
└──────────────────────────┘

1:23-cv-2444 (MKV)

OPINION & ORDER
GRANTING IN PART
AND
DENYING IN PART
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Bryan Nathaniel Johnson brings this case against Cameron Giles, a once-popular musical artist known as Cam'ron. Plaintiff alleges that Giles has used his musical compositions without permission in violation of a previous agreement and copyright law. For the reasons set forth below, Giles' motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND[1]

### A.  Facts

#### 1.  Plaintiff Writes and Giles Records Touch It Or Not and Triple Up

Plaintiff Bryan Nathaniel Johnson is a songwriter and music producer. FAC ¶ 10. Plaintiff alleges that, "in or around 2005," he met a music industry player who, with Plaintiff's consent, provided "two untitled musical compositions which Plaintiff had created . . . to the recording artist Cameron Giles (professionally known as 'Cam'ron') for him to consider using on an upcoming album." FAC ¶¶ 11, 13. Plaintiff was told that Giles "wished to use [the recordings] as the bases of songs on his upcoming album." FAC ¶ 14. "Plaintiff, who was unknown in the music industry

---

[1] The facts are taken from the First Amended Complaint [ECF No. 39 ("FAC")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers the copyright registrations attached to the First Amended Complaint. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

at that time, was very enthusiastic about this idea." FAC ¶ 14.

"Inexperienced in the music business and believing that [the industry player] was acting in his best interest, Plaintiff entrusted [the industry player] with the task of negotiating a license for the recordings and the two compositions embodied in the recordings with Mr. Giles." FAC ¶ 15. Plaintiff never heard back about "the potential license." FAC ¶ 16. "Plaintiff, therefore, believed" there was no agreement with Mr. Giles." FAC ¶ 16.

"Mr. Giles created lyrics and recorded vocal performances over the recordings embodying the two musical compositions created by Plaintiff, which Mr. Giles ultimately entitled 'Touch It Or Not' (alternatively titled 'Suck It Or Not') and 'Triple Up[,]' and featured these songs on his album 'Killa Season[.]'" FAC ¶ 17. "Killa Season" was "released" in 2006. FAC ¶ 18. On that album, Touch It Or Not "featured a vocal performance by the immensely popular recording artist Lil' Wayne." FAC ¶ 18. Tiple Up "featured a vocal performance by the artist 40 Cal." FAC ¶ 18. Giles also released Touch It Or Not as a single in 2006. FAC ¶ 19. Neither the album Killa Season nor the single Touch It Or Not "provided Plaintiff with a credit as a songwriter and producer" of the songs Touch It Or Not and Triple Up. FAC ¶ 20.

The 2006 album Killa Season "was a highly successful album which sold more than 500,000 copies." FAC ¶ 22. Touch It Or Not "was the most successful and critically acclaimed song on the album." FAC ¶ 22. In 2007, Giles released a film that was also called Killa Season, "featured the songs 'Touch It Or Not' and 'Triple Up[,]' and sold several hundred thousand copies." FAC ¶ 23. Giles also released a music video of Touch It Or Not and licensed the song to be played on the radio, in television shows, and in commercials. FAC ¶ 24.

"[U]nbeknownst to Plaintiff" at the time, "Mr. Giles, through his publishing entity, Killa Cam," obtained copyright registrations for Touch It Or Not and Triple Up in 2007. FAC ¶¶ 25, 27. According to Plaintiff, "Mr. Giles falsely listed himself and Dwayne Carter (Lil' Wayne) as

the authors of both the words and music" for Touch It Or Not.  FAC ¶ 25.  Giles "listed only himself as the author of the words and music" for Triple Up.  FAC ¶ 25.

At an unspecified time, Plaintiff "[r]ealiz[ed] Mr. Giles' [alleged] wrongdoing." FAC ¶ 28.

### 2.  The Alleged 2008 Oral Agreement about Touch It Or Not and Triple Up

In 2008, Plaintiff "retained counsel to seek redress from" Giles.  FAC ¶ 28.  According to Plaintiff, "Mr. Giles orally acknowledged Plaintiff's contributions and ownership rights in" the music for Touch It Or Not and Triple Up.  FAC ¶ 30.  Giles further orally "agreed to an accounting and payment of unpaid royalties."  FAC ¶ 30.  "In exchange, Plaintiff [orally] agreed to grant Mr. Giles a license to use and distribute the songs."  FAC ¶ 30.

### 3.  The Alleged Written Agreement about Touch It Or Not and Triple Up

Plaintiff alleges, "[u]pon information and belief," that, on an unspecified date after the alleged 2008 oral agreement, "Plaintiff and Mr. Giles also then memorialized their agreement in writing."  FAC ¶ 31.  Plaintiff alleges that the written agreement reflects that: (1) "Plaintiff would own fifty (50) percent" of the "musical compositions" and "sound recordings" of Touch It Or Not and Triple Up; (2) "Plaintiff would receive fifty (50) percent of all future royalties generated by the musical compositions" and "sound recordings of these songs"; (3) "Giles would pay Plaintiff a sum certain to compensate him for the [past] royalties on the songs which he had not received from the time of the songs' release until that time in 2008"; (4) "Plaintiff would be credited on any future release of the songs, and any derivative works, as a producer and songwriter"; and (5) "Giles would amend the copyright registrations . . . to reflect that Plaintiff is one of the owners and authors of the . . . songs."  FAC ¶ 31.

According to Plaintiff, pursuant to this alleged written agreement, "Plaintiff would not receive his fifty (50) percent of all future royalties . . . from Mr. Giles directly."  FAC ¶ 32.  Instead, Plaintiff "would receive these royalties from third-parties, including but not limited to Mr. Giles'

record label (e.g. Asylum Records) and publishing entities (e.g. Killa Cam), performing rights organizations (e.g. BMI and/or ASCAP) and digital music platforms." FAC ¶ 32. Plaintiff alleges that "Mr. Giles' obligation under the agreement was to direct these third-parties to pay Plaintiff's share of future royalties to Plaintiff directly." FAC ¶ 32.

### 4. The Alleged Breaches

Plaintiff alleges that "Mr. Giles failed to perform any of his obligations under [the alleged written agreement] with the sole exception of paying Plaintiff the sum certain to which the parties had agreed." FAC ¶ 33.

Plaintiff alleges that, "after the 2008 agreement with Plaintiff, Giles directed or approved of "a variety of music streaming platforms, including but not limited to Spotify, Apple Music and Tidal" distributing Touch It Or Not and Triple Up "in digital format." FAC ¶¶ 34, 35. Likewise, Giles directed or approved of "movie streaming platforms, including but not limited to Netflix and Amazon Prime" distributing the film Killa Season in digital format. FAC ¶ 36.

"No third-party . . . paid Plaintiff any royalties generated by the . . . new distributions." FAC ¶¶ 37, 38. Plaintiff alleges, "[u]pon information and belief," that the failure of any third party to pay such royalties was "a consequence of Mr. Giles' failure to direct all third-parties to pay," as required by the alleged written agreement. FAC ¶¶ 37, 38. In addition, Plaintiff was not credited "as a producer or songwriter on any of these new distributions." FAC ¶ 39.

### 5. Two Songs Released in 2017

According to Plaintiff, despite not receiving any royalties or credit for Touch It Or Not and Triple Up, Plaintiff made "a continued effort to establish a business relationship with Mr. Giles" throughout the years after their alleged settlement. FAC ¶ 40. Specifically, Plaintiff alleges that he "continued to provide Mr. Giles with recordings of new compositions which Plaintiff wrote, produced and created[] for Mr. Giles to consider using on a future album." FAC ¶ 40.

Plaintiff alleges that Giles used two of Plaintiff's "recordings as the bases of songs . . . on [Giles'] album The Program, which was released in 2017."  FAC ¶ 42.  According to Plaintiff, Giles used a song Plaintiff calls "Reflection Eternal" as the basis for the song "Uwasntthere" on The Program.  FAC ¶ 42.  Giles also used a song Plaintiff calls "Horny Horns" as the basis for the song "D.I.A." on The Program.  FAC ¶ 42.  Giles did not request permission or obtain a license from Plaintiff to use these songs.  FAC ¶ 43.

### 6.  Two Later Songs Not at Issue in this Case

Plaintiff further alleges that Giles used a song Plaintiff calls "Prime Minister" as the basis for a song Giles titled "Funkmaster Flex Freestyle," which "Giles performed live" on the "Funkmaster Flex radio show" on the New York City radio station "Hot 97 in early 2022."  FAC ¶¶ 42, 91.  Plaintiff further alleges that Giles used a song Plaintiff calls "Critics" as the basis for a song that Giles "also titled 'Critics' and included on his album 'The Lost Files Volume 1,' which was released in 2023 after Plaintiff filed this action."  FAC ¶ 42.  Giles did not request permission or obtain a license from Plaintiff to use these songs.  FAC ¶ 43.

### B.  Procedural History

Plaintiff initiated this action in late March 2023 by filing the Original Complaint [ECF No. 10].  In the Original Complaint, he named Giles and three entities, including Asylum Records LLC and Killa Cam music as defendants, but those entities have never appeared or answered.  Giles did appear, he filed an Answer to the Original Complaint, and the parties started discovery [ECF Nos. 21, 25].  Thereafter, Giles, with leave of the Court, filed an Amended Answer and a motion to partially dismiss the Original Complaint [ECF Nos. 28, 29, 34, 35].

Plaintiff responded to Giles' motion by filing the First Amended Complaint [ECF No. 39 ("FAC")].  As such, the Court issued an Order denying Giles' motion as moot [ECF No. 40].  In that Order, the Court also warned Plaintiff that he would not have another opportunity to amend

his pleading in response to arguments raised in Giles' earlier-filed motion to partially dismiss the Original Complaint [ECF No. 40].

In the First Amended Complaint, which superseded the Original Complaint as Plaintiff's operative pleading, Plaintiff names Giles as the sole defendant in this case.[2]  Plaintiff asserts eight claims for relief against Giles.   First, he asserts a claim for breach of the alleged 2008 oral agreement with Giles about Touch It Or Not and Triple Up.   FAC ¶¶ 46–52 ("Claim 1"). Specifically, Plaintiff alleges that Giles breached the alleged oral agreement by: (1) "failing to cause Plaintiff to be paid" royalties generated by Touch It Or Not and Triple Up "at any time after 2008," FAC ¶ 49; (2) "failing to provide Plaintiff with credit for producing and writing the songs" in new "releases and distributions" after 2008, FAC ¶ 50; and (3) "failing to amend the copyright registrations" for the songs, FAC ¶ 51.   Second, Plaintiff asserts a claim for breach of the alleged written agreement about Touch It Or Not and Triple Up based on substantially identical allegations.  *See* FAC ¶¶ 53–59 ("Claim 2").

In his third and fourth claims, Plaintiff seeks equitable relief for Giles' alleged wrongdoing with respect to Touch It Or Not and Triple Up.   The third claim is for unjust enrichment.   FAC ¶¶ 60–63 ("Claim 3").   The fourth claim is for "an accounting of royalties due" to Plaintiff as alleged co-author and co-owner of Touch It Or Not and Triple Up.   FAC ¶¶ 66–70 ("Claim 4").

Plaintiff's remaining claims are all for copyright infringement of the later-released songs. Plaintiff's fifth claim is for copyright infringement of the musical composition Plaintiff calls Horny Horns, which Giles allegedly "incorporated . . . into the song 'D.I.A.,'" "released in 2017 on his album The Program," and "has continued to cause to be distributed" since 2017.   FAC ¶¶ 75, 77;

---

[2] It is well-established that "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)).

*see* FAC ¶¶ 71–78 ("Claim 5").  Plaintiff's sixth claim is for copyright infringement of the musical composition Plaintiff calls Reflection Eternal, which Giles allegedly "incorporated . . . into the song 'Uwasntthere,'" "released in 2017 on his album The Program," and "has continued to cause to be distributed" since 2017.  FAC ¶¶ 83, 85; *see* FAC ¶¶ 79–86 ("Claim 6").

Plaintiff's seventh claim is for copyright infringement of the musical composition Plaintiff calls Prime Minister, which Giles allegedly "incorporated . . . into the song 'Funkmaster Flex Freestyle'" and "released in January 2022 on the Funkmaster Flex radio show on [the] New York City radio station WQHT Hot 97FM."  FAC ¶ 91; *see* FAC ¶¶ 87–94 ("Claim 7").  Plaintiff alleges that Giles "has continued to cause" that performance "to be digitally distributed" since 2022.  FAC ¶ 93.  Finally, Plaintiff's eighth claim is for copyright infringement of the musical composition Plaintiff calls Critics that Giles allegedly "incorporated . . . into his song 'Critics,'" "released in 2023 on his album The Lost Files Volume 1," and "has continued to cause to be distributed" since then.  FAC ¶¶ 99, 101; *see* FAC ¶¶ 95–102 ("Claim 8").

Four copyright registrations are attached to the First Amended Complaint.  They are for: (1) Horny Horns [ECF No. 39-1]; (2) Reflection Eternal [ECF No. 39-2]; (3) Prime Minister [ECF No. 39-3]; and (4) Critics [ECF No. 39-4].  They reflect that the copyrights for Horny Horns, Reflection Eternal, and Prime Minister were obtained in February 2023, shortly before Plaintiff filed the Original Complaint in this case.  All four registrations state that Plaintiff is the author of the work, but the copyright claimant is "Hebrew Hustle."

Giles responded to the First Amended Complaint with a motion to dismiss some, but not all, of Plaintiff's claims [ECF Nos. 43, 44, 45 ("Def. Mem.")].  Giles seeks dismissal of the claims for breach of the alleged 2008 oral agreement (Claim 1), breach of the alleged written agreement (Claim 2), unjust enrichment (Claim 3), accounting (Claim 4), copyright infringement of Horny Horns (Claim 5), and copyright infringement of Reflection Eternal (Claim 6).  Def. Mem. at 1.  He

does not seek to dismiss Plaintiff's copyright infringement claims with respect to Prime Minister and Critics. *See id.* In connection with his motion, Giles asks the Court to take judicial notice of a number of documents that are not attached to the First Amended Complaint, including webpages about the 2017 release of Giles' album The Program, copyrights for some of the songs at issue, and an email exchange between counsel regarding whether Plaintiff has been able to locate a copy of the alleged written agreement about Touch It Or Not and Triple Up, which is not attached to the First Amended Complaint or otherwise in the record [ECF No. 44].

Plaintiff filed a brief in opposition to Giles' motion to partially dismiss the First Amended Complaint [ECF No. 48 ("Opp.")]. Giles filed a reply [ECF No. 50 ("Reply")]. Plaintiff then filed a request to strike Giles' reply on the ground that it was untimely [ECF No. 51], which request Giles opposes [ECF No. 52]. The parties thereafter jointly requested an extension of the deadline to complete the discovery until sometime after the Court's resolution of Giles' motion to partially dismiss the First Amended Complaint [ECF No. 54].

## II.    LEGAL STANDARD

### A. Motion To Dismiss

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

The "complaint is deemed to include any written instrument attached to it," such as the four copyright registrations attached to the First Amended Complaint here. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. &*

*Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  A court may also take judicial notice of federal copyright registrations that are not attached to the complaint, as well as facts that can be "readily determined from sources whose accuracy cannot reasonably be questioned."  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).  Even at the pleading stage, a court is not required to accept allegations that are "contradicted by" such "documentary evidence."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

### III.    DISCUSSION

#### A.  Plaintiff Fails To State a Claim for Breach of the Alleged 2008 Oral Agreement (Claim 1).

There are several fatal problems with Plaintiff's claim for breach of the alleged 2008 oral agreement.  First, Plaintiff does not allege that Giles orally agreed to the terms that Giles allegedly breached.  Second, any oral agreement that Giles allegedly breached is barred by either the Statute of Frauds or the statute of limitations.  Furthermore, Plaintiff describes the alleged oral agreement as a settlement, which ordinarily must be in writing, and, while perhaps not dispositive at the pleading stage, his allegation that the parties later reduced their settlement agreement to writing suggests that Giles may not be held liable based on the alleged oral agreement.

The parties agree that New York law governs Plaintiff's state law claims, including his contract claims.[3]  *See* Def. Mem. at 9–15; Opp. at 9–19.  Under New York law, a plaintiff asserting a claim for breach of contract must "allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *accord Second Source Funding, LLC v. Yellowstone Cap., LLC*, 144 A.D.3d

---

[3] Since the parties agree that New York law governs the state law claims, the Court will apply New York law without conducting a choice-of-law analysis.  *See Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York . . . law, all are deemed to have consented to its application.").

445, 445, 40 N.Y.S.3d 410, 411 (1st Dept. 2016). As such, the plaintiff must allege both "the existence of a contract reflecting the terms and conditions of the[] purported agreement'" and a breach of those alleged terms. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181–82, 944 N.E.2d 1104, 1110 (2011) (ellipses omitted) (quoting *American–European Art Assoc. v. Trend Galleries*, 227 A.D.2d 170, 171, 641 N.Y.S.2d 835 (1st Dept. 1996)).

### 1. Plaintiff Fails To Allege a Breach of the Oral Agreement.

In the First Amended Complaint, with respect to the alleged 2008 oral agreement, Plaintiff specifically alleges only:

> After receiving Plaintiff's demands, *upon information and belief*, Mr. Giles **orally** acknowledged Plaintiff's contributions and ownership rights in the recordings and the musical compositions embodied in those recordings and *agreed to an accounting and payment of unpaid royalties*. In exchange, Plaintiff agreed to grant Mr. Giles a license to use and distribute the songs.

FAC ¶ 30 (emphases added). Plaintiff then alleges that Giles breached their *oral* agreement by failing to perform specific terms that Plaintiff alleges the *written* agreement contained. *Compare* FAC ¶ 30, *with* FAC ¶¶ 31, 32. He alleges that Giles breached the oral agreement by: (1) "failing to cause Plaintiff to be paid fifty (50) percent of . . . royalties generated by the songs 'Touch It Or Not' or 'Triple Up' at any time after 2008," FAC ¶ 49; (2) "failing to provide Plaintiff with credit for producing and writing the songs . . . in releases . . . after 2008," FAC ¶ 50; and (3) "failing to amend the copyright registrations for 'Touch It Or Not' or 'Triple Up' to reflect that Plaintiff is an owner and author of these songs," FAC ¶ 51.

The "purported [oral] agreement," as alleged by Plaintiff, does not "reflect[] the terms" Giles allegedly breached. *Mandarin Trading Ltd.*, 16 N.Y.3d at 181–82, 944 N.E.2d at 1110. As set forth verbatim above, Plaintiff alleges that Giles "*orally*" promised him only an accounting and payment of "*unpaid* royalties." FAC ¶ 30 (emphases added). The First Amended Complaint goes on to allege that Giles *subsequently*, FAC ¶ 31 ("then"), "*in writing*" agreed that Giles would not

only "pay Plaintiff a sum certain to compensate him for the [unpaid] royalties," but also "direct . . . third-parties" to pay "fifty (50) percent of all *future* royalties," FAC ¶¶ 31, 32 (emphases added). According to Plaintiff, Giles also agreed "*in writing*" that "Plaintiff would be credited on any future release," and "Giles would amend the copyright registrations" for Touch It Or Not and Triple Up.  FAC ¶ 31 (emphasis added).  Plaintiff fails to state a claim for breach of the *oral* agreement because he fails to allege that the purported oral agreement included any of the "pertinent terms" that Giles allegedly breached.  *Mandarin Trading Ltd.*, 16 N.Y.3d at 182, 944 N.E.2d at 1110; *see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 543 (1981) ("before one may secure redress in our courts because another has failed to honor a promise, it must appear that the promisee assented to the obligation in question").  Indeed, Plaintiff expressly alleges that Giles did pay him for the *unpaid* royalties that Giles orally promised to pay.  *See* FAC ¶ 33.  The failure to allege any breach of the alleged oral agreement is fatal to Plaintiff's first claim.  *See Second Source Funding, LLC*, 144 A.D.3d at 445, 40 N.Y.S.3d at 411.

### 2. Any Oral Agreement that Giles Allegedly Breached Is Barred by either the Statute of Frauds or the Statute of Limitations.

Even supposing that the alleged oral agreement included the terms of the alleged written agreement (a supposition belied by the text of the First Amended Complaint, reproduced above), then the supposed 2008 oral agreement is barred by the Statute of Frauds.  The Statute of Frauds provides that an oral agreement is "void" if the agreement "[b]y its terms is not to be performed within one year from the making thereof . . . ."  N.Y. Gen. Obl. Law § 5-701(a)(1); *see Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*, 65 N.Y.2d 75, 79, 479 N.E.2d 236, 238 (1985).  Thus, it is well-established under New York law that a "contract of indefinite duration . . . must be in writing."  *Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 447 (E.D.N.Y. 2012)

(Bianco, J.) (quoting *Zupan v. Blumberg*, 2 N.Y.2d 547, 550, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957)). Crucially, "any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds." *Sirico v. F.G.G. Prods., Inc.*, 896 N.Y.S.2d 61, 66, 71 A.D.3d 429, 434 (1st Dep't 2010); *accord Melwani v. Jain*, 281 A.D.2d 276, 276, 722 N.Y.S.2d 145, 146 (1st Dep't 2001).

As explained above, Plaintiff clearly alleges that Giles *orally* agreed only to "payment of *unpaid* [*i.e.* past] royalties," and, "[i]n exchange, Plaintiff agreed to grant Mr. Giles a license to use and distribute" Touch It Or Not and Triple Up. FAC ¶ 30 (emphasis added). Nevertheless, for purposes of this discussion, the Court supposes, *arguendo*, that the First Amended Complaint alleges an *oral* agreement that "Plaintiff would receive fifty (50) percent of *all future* royalties generated by" Touch It Or Not and Triple Up. FAC ¶ 31 (emphasis added) (describing the written agreement); *see* FAC ¶ 49 (alleging that Giles breached the oral agreement "by failing to cause Plaintiff to be paid fifty (50) percent" of "royalties generated . . . at any time after 2008"). That supposed oral agreement is barred by the Statute of Frauds. *See Sirico*, 896 N.Y.S.2d at 66 ("any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds"); *Melwani*, 281 A.D.2d at 276, 722 N.Y.S.2d at 146.

Plaintiff unpersuasively attempts to distinguish this case from the New York cases on point. He argues that Giles could have performed within one year because his "obligation under the agreement was to direct . . . . third-parties, including but not limited to Mr. Giles' record label (e.g. Asylum Records) and publishing entities (e.g. Killa Cam), performing rights organizations (e.g. BMI and/or ASCAP) and digital music platforms" to pay Plaintiff a share of all "future royalties," FAC ¶ 32. *See* Opp. at 13–16. Plaintiff asserts in his brief that "in 2008 or within one year of that time, Defendant could have *directed*" various third parties to pay Plaintiff "all future royalties." Opp. at 14 (emphasis altered).

The Statute of Frauds bars the supposed oral agreement irrespective of whether it required Giles to pay directly or to "cause Plaintiff to be paid" a share of all future royalties. FAC ¶ 49. An agreement that imposes an obligation on a defendant with respect to "all future royalties," FAC ¶ 31, is a "contract of indefinite duration" that "must be in writing," *Nasso*, 892 F. Supp. 2d at 447 (quoting *Zupan*, 2 N.Y.2d at 550, 161 N.Y.S.2d at 141). Actions that Giles could have taken "in 2008 or within one year of that time," Opp. at 14, would not have been sufficient to "cause Plaintiff to be paid" a share of *all* future royalties from an *open-ended* set of third parties, FAC ¶ 49; *see* FAC ¶ 32 (specifying that Giles' obligation to direct third parties to pay Plaintiff future royalties was "*not limited to*" an enumerated list of entities) (emphasis added). Indeed, New York courts have concluded that an "oral contract is indefinite [where] its performance depends on the actions of third-parties." *Nasso*, 892 F. Supp. 2d at 447; *see Zupan*, 2 N.Y.2d at 550, 141 N.E.2d at 820; *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 785, 602 N.Y.S.2d 116, 117 (1st Dep't 1993) ("Such an agreement is not capable of performance within a year, performance being dependent not upon the will of the parties to the oral contract but upon that of third parties, and is thus unenforceable under the Statute of Fraud[s].").

Plaintiff offers an elaborate hypothetical in which, in 2008, Giles directs all of the digital music platforms that distributed Touch It Or Not and Triple Up at that time to pay Plaintiff future royalties and, thereafter, Giles refuses to allow any other digital music platform to distribute the songs. *See* Opp. at 14. This hypothetical might require Giles to take steps to comply with the supposed oral agreement long after 2008, by rebuffing new digital music platforms, and, in any event, ignores all of the other third parties Giles was supposedly obliged to cause to make payments. Perhaps recognizing these flaws in his hypothetical, Plaintiff argues that Giles could have totally "ceased distributing the songs" after 2008, which "would have resulted in the termination of all his obligations under the agreement." Opp. at 16. The New York Court of

Appeals, however, has rejected that logic. *Martocci v. Greater New York Brewery*, 301 N.Y. 57, 63, 92 N.E.2d 887, 889 (1950) (holding that "cessation . . . would not alter the contractual relationship between the parties; it would not constitute performance; plaintiff would still be in possession of his contractual right, though it may have no monetary value, immediately or ever."). Moreover, the total cessation argument is equally applicable to an oral agreement to directly pay future royalties, which, New York courts have held, is barred by the Statute of Frauds. *See Sirico*, 896 N.Y.S.2d at 66; *Melwani*, 281 A.D.2d at 276, 722 N.Y.S.2d at 146. Accordingly, the supposed oral agreement concerning future royalties is barred by the Statute of Frauds

The Statute of Frauds likewise bars the supposed oral agreement that Giles would "provide Plaintiff with credit for producing and writing" Touch It Or Not and Triple Up in future releases and distributions of the songs. FAC ¶ 50. As with the claim about future royalties, the claim about credit on future releases and distributions presupposes an oral contract of indefinite duration that would require Giles to work with an open-ended set of third parties involved in future releases and distributions of the songs. For the reasons explained above, such an oral contact similarly would be barred by the Statute of Frauds. *See Zupan*, 2 N.Y.2d at 550, 161 N.Y.S.2d at 141.

As discussed below, Giles also argues that all of Plaintiff's breach of contract claims (oral and written) are barred by the statute of limitations. *See* Def. Mem. at 11–13, 16; *infra* at Section III(B)(1). In response to that argument, Plaintiff stresses that "[w]here a contract contemplates continuous performance," such as "multiple payments" over time, "each instance of non-performance . . . re-commences the statute of limitations." Opp. at 10 (quoting *Olin Corp. v. Ins. Co. of N. America*, No. 84-cv-1968, 2016 WL 1048057, at *8 (S.D.N.Y. Mar. 11, 2016)). Thus, Plaintiff contends, he can press his claims based on failures to give him royalties and credit for "new distributions which occurred within six years of the time Plaintiff filed this action in March 2023, that is, as far back as March 2017," without running afoul of "the statute of limitations."

Opp. at 12. Plaintiff's response to Giles' statute-of-limitations argument simply underscores that

the supposed oral agreement "contemplates continuous performance" with respect future royalties

and credit, Opp. at 10 (quoting *Olin Corp.*, 2016 WL 1048057, at *8), "extending beyond one

year," for an indefinite period of time, and, therefore, violates the Statute of Frauds, *Sirico*, 896

N.Y.S.2d at 66; *see Zupan*, 2 N.Y.2d at 550, 161 N.Y.S.2d at 141.

Plaintiff alleges that Giles also breached the supposed 2008 oral agreement by "failing to

amend the copyright registrations for 'Touch It Or Not' or 'Triple Up' to reflect that Plaintiff is an

owner and author of these songs." FAC ¶ 51. As explained above, this claim fails because, based

on Plaintiff's own allegations about the terms of the oral agreement, Giles never *orally* agreed to

amend his copyrights. *See* FAC ¶ 30. While there is no Statute of Frauds issue with this claim,

since it was possible for Giles to perform within one year, Plaintiff concedes that it is barred by

the statute of limitations, as the Court explains below. *See infra* at Section III(B)(1).

### 3. Plaintiff Describes the Alleged Oral Agreement as a Settlement and he Alleges that the Parties later Reduced their Alleged Settlement Agreement to Writing.

Before turning to the statute-of-limitations issue, the Court observes two further problems

with Plaintiff's claim for breach of the alleged oral agreement. First, Plaintiff describes the alleged

oral agreement as a "settlement agreement." FAC ¶¶ 48–52. Under New York law, "[s]ettlements

of any claim are generally required to be in writing or, at a minimum, made on the record in open

court." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997) (citing N.Y.

C.P.L.R. § 2104). The alleged oral agreement might be unenforceable on this basis alone, although

neither party addresses this issue in his briefing.

Second, Plaintiff alleges that he and Giles later reduced their agreement to writing. *See*

FAC ¶ 31. In New York, courts will not enforce an oral agreement if the parties clearly intended

to be bound only by a later written agreement. *See Scheck v. Francis*, 26 N.Y.2d 466, 469–70,

260 N.E.2d 493, 494 (1970) ("It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing . . . , they are not bound and may not be held liable" based on an oral agreement); *Ciaramella*, 131 F.3d at 323.  This issue typically arises where the parties to an oral agreement never ultimately executed a written document.  Here, Plaintiff expressly alleges that the parties did reduce their agreement to writing, *see* FAC ¶ 31, although the alleged written agreement is not presently in the record.

To be sure, "the desire to memorialize an oral contract in a formal writing, without more, does not demonstrate that an oral agreement is non-binding."  *Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, No. 17-cv-6513 (CS), 2019 WL 1397196, at *3 (S.D.N.Y. Mar. 28, 2019).  Here, however, Plaintiff alleges significant differences between the oral and written agreements, suggesting that the terms of the alleged oral agreement did not reflect a final agreement.  *See Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007).  Indeed, it is well-established that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing."  *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002) (quoting *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018, 584 N.Y.S.2d 424, 594 N.E.2d 918 (1992)).  While perhaps not dispositive at this stage, Plaintiff's own allegations about the oral agreement and later written agreement suggest the alleged oral agreement was not a final, binding contract.

For all of the reasons set forth above, and the statute-of-limitations issue discussed below, Plaintiff's claim for breach of the alleged 2008 oral agreement (Claim 1) is dismissed in its entirety.

### B.  The Statute of Limitations

Plaintiff alleges that he entered into oral and written agreements with Giles in 2008, approximately fifteen years before he initiated this action [ECF No. 1].  *See* FAC ¶¶ 30, 31. Plaintiff alleges that, in all of that time, he was never paid "any royalties" generated by Touch It Or Not and Triple Up after 2008.  FAC ¶¶ 37, 38.  Plaintiff further alleges that he never received

credit as a producer or songwriter on any new release or distribution.  FAC ¶ 39.  And, for fifteen years after he allegedly promised to do so, Giles never amended the copyrights.  *See* FAC ¶ 51. Plaintiff, however, failed to seek relief until 2023 [ECF No. 1].  Indeed, Plaintiff explains in the First Amended Complaint that "[n]otwithstanding" Giles' alleged breaches, "in a continued effort to establish a business relationship with Mr. Giles, throughout the following years[,] Plaintiff continued to provide Mr. Giles with recordings of new compositions which Plaintiff wrote, produced and created, for Mr. Giles to consider using . . . ."  FAC ¶ 40.

In the American legal system, there is always "a time limit for suing in a civil case."  *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) (quoting Black's Law Dictionary 1546 (9th ed. 2009) ("Black's")).  "Statutes of limitations establish the period of time within which a claimant must bring an action."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013).  These time limits serve important purposes.  They "require plaintiffs to pursue 'diligent prosecution of known claims.'"  *CTS Corp.*, 573 U.S. at 8 (quoting Black's 1546).  They "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  *CTS Corp.*, 573 U.S. at 8 (brackets omitted) (quoting *Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–349 (1944)).  A time bar also "embodies the idea that at some point a defendant should be able to put past events behind him."  *CTS Corp.*, 573 U.S. at 9.  "Unexplained delay" in bringing suit "is evidence of waiver and acquiescence in non-performance."  *City of New York v. New York Cent. R. Co.*, 275 N.Y. 287, 293, 9 N.E.2d 931, 934 (1937).

Under New York law, the statute of limitations for a breach of contract claim is six years and begins to run when the breach occurs or the claim otherwise accrues such that the plaintiff could bring suit.  *See* N.Y. C.P.L.R. § 213(2); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 615 N.E.2d 985, 986, 599 N.Y.S.2d 501, 502 (1993).  "The plaintiff need not be aware

of the breach or wrong to start the period running." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (citing *Ely-Cruikshank Co.*, 81 N.Y.2d at 403, 615 N.E.2d at 987, 599 N.Y.S.2d at 503). "Where a contract does not specify a date or time for performance, New York law implies a reasonable time period." *Guilbert*, 480 F.3d at 149 (citing *Schmidt v. McKay*, 555 F.2d 30, 35 (2d Cir. 1977) (collecting New York cases); *Lituchy v. Guinan Lithographic Co.*, 60 A.D.2d 622, 622, 400 N.Y.S.2d 158, 159 (2d Dep't 1977)); *see City of New York v. New York Cent. R. Co.*, 275 N.Y. at 292–93, 9 N.E.2d at 934.

### 1. As Plaintiff Concedes, his Contract Claims Based on Giles' Failure To Amend the Copyright Registrations for Touch It Or Not and Triple Up are Time-Barred.

Giles argues that all of Plaintiff's breach of contract claims (oral and written) are barred by the statute of limitations. *See* Def. Mem. at 11–13, 16. Plaintiff responds only that his claims about post-2008 royalties and credit as a producer and songwriter are not *entirely* time-barred, as discussed further below. *See* Opp. at 9–12. Plaintiff, however, does not argue that his contract claims based on Giles' alleged promise to amend the copyright registrations for Touch It Or Not and Triple Up are timely. *See* Opp. at 9–12. Plaintiff simply fails to respond to Giles's argument that these claims are barred by the statute of limitations.

It is well-established that a "plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (citing *Rosenblatt v. City of N.Y.*, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007)); *see Scott v. JPMorgan Chase & Co.*, No. 13-cv-646 (KPF), 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (dismissing claims because the plaintiff "failed to respond," and thus "effectively concede[d]," an argument with "conclusive effect") (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015); *Tlapanco v. Elges*, No. 15-cv-2852 (AJN), 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017) (ruling that plaintiff forfeited an argument by failing to raise it in an opposition brief);

*cf. Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 n.2 (2d Cir. 1996). By failing to respond to Giles' argument that Plaintiff's contract claims about the copyright registrations for Touch It Or Not and Triple Up are barred by the statute of limitations, Plaintiff "effectively concedes" that those claims are time-barred and, therefore, should be dismissed. *Scott*, 2014 WL 338753, at *10. Accordingly, Plaintiff's claims that Giles breached the alleged oral and written agreements by failing to amend the copyright registrations for Touch It Or Not and Triple Up, FAC ¶¶ 51, 58, are dismissed on this basis.

The Court notes that, if Plaintiff had not conceded the argument, the Court almost certainly would conclude as a matter of law that Plaintiff's contract claims about the copyright registrations are time-barred. The Second Circuit has held that a defendant may raise a statute-of-limitations defense on a motion to dismiss where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis omitted) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). Plaintiff does not allege a date certain by which Giles was required to amend the copyrights. Thus, Plaintiff "was free to bring suit on his contract claim[s] any time after a reasonable time for [Giles'] performance had elapsed." *Schmidt*, 555 F.2d at 36. Although "what constitutes a reasonable time is typically a question of fact," where there is no material factual dispute, "the determination of what constitutes a reasonable time becomes a question of law . . . ." N.Y. Pattern Jury Instr.--Civil 4:1; *see Zev v. Merman*, 73 N.Y.2d 781, 783, 533 N.E.2d 669, 669 (1988) (upholding the court's determination of a reasonable time to perform).

Plaintiff alleges that Giles promised in 2008 to amend the copyright registrations for Touch It Or Not and Triple Up. FAC ¶ 31. Plaintiff asserts in his brief that Giles "obvious[ly]" could have "fulfilled" this promise "within one year." Opp. at 13 n.7. According to Plaintiff, however,

Giles never amended the copyright registrations, *see* FAC ¶¶ 51, 58, and yet Plaintiff waited fifteen years, until 2023, to bring suit on his contract claims [ECF No. 1], even though the statute of limitations for a breach of contract is six years, *see Ely-Cruikshank Co.*, 81 N.Y.2d at 402, 615 N.E.2d at 986, 599 N.Y.S.2d at 502. Accepting Plaintiff's version of the facts, nine years is not a "reasonable time," *Schmidt*, 555 F.2d at 36, for Giles to perform a promise that, according to Plaintiff, he "obvious[ly]" could have performed within one year, Opp. at 13 n.7. As such, had Plaintiff not already conceded the point, the Court would conclude that Plaintiff's contract claims about the copyright registrations for Touch It Or Not and Triple Up are barred as a matter of law. *Staehr*, 547 F.3d at 425.

Accordingly, Plaintiff's claim for breach of the alleged written agreement (Claim 2) is dismissed with respect to the alleged promise to amend the copyright registrations for Touch It Or Not and Triple Up.

> **2. At this Stage, the Statute of Limitations Does Not Entirely Bar Plaintiff's Claims for Breach of the Alleged Written Agreement with respect to post-2008 Royalties and Credit as a Producer and Songwriter, and Giles Offers No Other Basis to Dismiss these Claims for Breach of the Alleged Written Agreement.**

As noted above, Giles argues that all of Plaintiff's claims for breach of the alleged written agreement are time-barred. *See* Def. Mem. at 16; *see also* Def. Mem. at 11–13. He contends that, given the six-year statute of limitations, Plaintiff only "had until 2014 to bring a cause of action for breach of contract." Def. Mem. at 16. As also noted above, Plaintiff responds that his claims for breach of contract with respect to post-2008 royalties and credit as a producer and songwriter are timely for "new distributions [of Touch It Or Not and Triple Up] which occurred within six years of the time Plaintiff filed this action in March 2023, that is, as far back as March 2017." Opp. at 12. Plaintiff is correct.

Unlike an oral agreement, a written agreement may require "continuous performance" over

an indefinite time horizon. *Olin Corp.*, 2016 WL 1048057, at *8; *accord Nuance Commc'ns, Inc. v. Int'l Bus. Machines Corp.*, 544 F. Supp. 3d 353, 382 (S.D.N.Y. 2021), *aff'd*, 2022 WL 17747782 (2d Cir. Dec. 19, 2022); *see Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007). Crucial here, "[u]nder the continuing breach doctrine, where 'a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew.'" *Nuance Commc'ns, Inc.*, 544 F. Supp. 3d at 382 (quoting *Guilbert*, 480 F.3d at 150). Thus, under this doctrine, Plaintiff may seek damages for any *new* breaches—*i.e.*, new distributions of Touch It Or Not and Triple Up for which Plaintiff did not receive royalties or credit—within six years before Plaintiff filed this action. *See Henry v. Bank of America*, 147 A.D.3d 599, 601, 48 N.Y.S.3d 67, 70 (1st Dep't 2017) ("the doctrine will save all claims for recovery of damages but only to the extent of wrongs committed within the applicable statute of limitations").

Giles complains that the First Amended Complaint is vague. *See* Def. Mem. at 13. But Giles' statute-of-limitations argument is an affirmative defense that must be "clear from the face of the complaint, and matters of which the court may take judicial notice." *Staehr*, 547 F.3d at 425. It is not clear on the face of the First Amended Complaint that none of Giles' alleged breaches with respect to royalties and credit took place after March 2017. Indeed, in the context of his Statute of Frauds argument, Giles asks the Court to take judicial notice that the music streaming platforms Tidal and Apple Music, which both allegedly distribute Touch It Or Not and Triple Up, FAC ¶¶ 34, 35, "were not launched until 2014 and 2015[,] respectively," Def. Mem. at 11 (citing Griffith Decl., Ex. C [ECF No. 44-3]). Since neither party suggests that Giles caused Tidal and Apple Music to distribute the songs (without paying or crediting Plaintiff) shortly after those platforms launched, based on Giles' own arguments, his alleged breaches involving Tidal and

Apple Music could have been within the six-year statute of limitations.[4]

Giles fails to supply any other basis to dismiss Plaintiff's claim for breach of the alleged written agreement in connection with post-2008 royalties and credit as a producer and songwriter of Touch It Or Not and Triple Up.  Although Giles briefly argues that Plaintiff fails to allege enough facts to state a claim, *see* Def. Mem. at 13–15, the argument is unpersuasive.  Giles stresses that Plaintiff failed to attach "a copy of the alleged written agreement to the Complaint because Plaintiff does not have a copy."  Def. Mem. at 14.  Giles further grouses that Plaintiff does not specify a deadline for "when [Giles] was to perform []his obligations under the written agreement" or "how . . . Giles would cause . . . royalties to be paid."  Def. Mem. at 14–15.

To survive Giles' argument, Plaintiff need only allege sufficient facts, taken as true, to state a plausible claim for breaches of the alleged written agreement.  *See Ashcroft*, 556 U.S. at 678.  He must allege only the "essential terms . . . upon which liability is predicated . . . 'in nonconclusory language.'"  *Sirohi v. Trustees of Columbia Univ.*, 162 F.3d 1148, 1148 (2d Cir. 1998) (quoting *Sud v. Sud*, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1st Dep't 1995)).  Here, the First Amended Complaint adequately alleges that (1) Plaintiff and Giles entered into a written agreement that contemplated Plaintiff granting Giles a license to use the music for Touch It Or Not and Triple Up in exchange for, among other things, Giles directing third parties to pay Plaintiff royalties and credit him as a producer and songwriter in new distributions of the songs after 2008, *see* FAC ¶¶ 30–32, 48; (2) Plaintiff performed by granting Giles a license, FAC ¶¶ 48, 55; (3) Giles breached

---

[4] The Court is not taking judicial notice of the years in which Tidal and Apple Music purportedly launched.  The Court may take judicial notice of a fact that can be "readily determined from sources whose accuracy cannot reasonably be questioned."  *Island Software & Computer Serv., Inc.*, 413 F.3d at 261.  Giles, however, offers Wikipedia pages [ECF No. 44-3].  Wikipedia is a far cry from a source "whose accuracy cannot reasonably be questioned."  *Island Software & Computer Serv., Inc.*, 413 F.3d at 261.  As such the Court cannot take judicial notice of the purported launch dates of Tidal and Apple Music.  Rather, the Court is merely mentioning Giles' request to notice these dates to illustrate that, based on assertions in his own brief, Giles cannot make out statute-of-limitations defense with respect to Plaintiff's written-contract claims about royalties and credit.

by failing to cause Plaintiff to receive royalties and credit, *see* FAC ¶¶ 33–39, 56–58; and (4) Plaintiff suffered damages as a result, FAC ¶ 58.  *See Second Source Funding, LLC*, 144 A.D.3d at 445, 40 N.Y.S.3d at 411.

Contrary to Giles' suggestion, Plaintiff is not required to attach a copy of the alleged written agreement to the First Amended Complaint, nor plead its terms verbatim.  *See Daiei Trading Co. v. Williams Rice Milling Co.*, 30 F. App'x 13, 15 (2d Cir. 2002); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011); *Griffin Bros. v. Yatto*, 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (3d Dep't 1979).[5]  As discussed above, under New York law, the written agreement itself need not specify a certain deadline for "when [Giles] was to perform," Def. Mem. at 14–15.  *See Guilbert*, 480 F.3d at 149.  Further, with respect to "how" Giles was to "cause" the payment of royalties, Def. Mem. at 15, Plaintiff specifically alleges that "Giles' obligation . . . was to direct . . . third-parties to pay Plaintiff's share of future royalties to Plaintiff directly," FAC ¶ 32.  No further factual detail on this point is necessary, at the pleading stage, to allege the "essential terms" of Plaintiff's alleged agreement with Giles.  *Sirohi*, 162 F.3d at 1148.

Accordingly, Giles' motion to dismiss is denied as to Plaintiff's claim for breach of the alleged written agreement (Claim 2) with respect to any alleged *new* breaches of the agreements to pay royalties and provide credit on new distributions of Touch It Or Not and Triple Up within the six years before Plaintiff filed this action.

## C.  Plaintiff States a Claim for Unjust Enrichment (Claim 3).

Plaintiff asserts a claim for unjust enrichment.  *See* FAC ¶¶ 60–63.  In asserting this claim, Plaintiff merely "realleges" all of the factual allegations in the First Amended Complaint, without

---

[5] Giles further argues that, since he contends the written agreement is lost, Plaintiff will improperly rely on only his self-serving testimony to prove its existence and contents.  *See* Def. Mem. at 16–17.  This argument is premature.  It remains to be seen whether Plaintiff will produce the alleged written agreement or other evidence of its existence during discovery.

specifying the particular alleged conduct upon which the claim rests. FAC ¶ 60. He further alleges only that Giles "has been unjustly enriched at the expense of Plaintiff" and that, "[i]n equity and good conscience, [Giles] should not be permitted to retain the benefits he obtained unjustly." FAC ¶¶ 60–62. In his opposition brief, Plaintiff clarifies that his claim for unjust enrichment is an alternative theory of liability in the event that he cannot prevail on his (oral and written) contract claims involving Touch It Or Not and Triple Up. *See* Op. at 21.

To state a claim for unjust enrichment in New York, a plaintiff must allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Beth Israel Med. Ctr.*, 448 F.3d at 586 (emphasis in original) (quoting *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005)). Nevertheless, under Rule 8(d) of the Federal Rules of Civil Procedure, where, as here, the validity of contracts are in dispute, a plaintiff may plead unjust enrichment in the alternative. *See Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012).

Giles seeks dismissal of this claim in a footnote. Def. Mem. at 15 n.4. He contends that "[i]f this Court should find there is not an enforceable agreement between Plaintiff and Giles, the Court should also dismiss Plaintiff's unjust enrichment cause of action." *Id.* He adds the Court "should also dismiss Plaintiff's claim for unjust enrichment as it is barred under New York's six-year statute of limitations." *Id.* (citing N.Y. C.P.L.R. § 213).

Guided by the liberal pleading standards of Rule 8 and Second Circuit precedent, the Court rejects Giles' half-hearted request to dismiss Plaintiff's unjust enrichment claim at this stage of the case. *See Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999). To be sure, a plaintiff cannot ultimately recover on both contract and unjust enrichment claims. *See Beth Israel Med. Ctr.*, 448 F.3d at 586–87. However, as explained above, the parties here dispute whether there exists a valid written agreement between Plaintiff and Giles about paying Plaintiff royalties and crediting him as a producer and songwriter for post-2008 distributions of Touch It Or Not and Triple Up. In this circumstance, Plaintiff is entitled to assert a claim for unjust enrichment in the alternative. *See LivePerson, Inc.*, 83 F. Supp. 3d at 519. While Plaintiff's recitation of the unjust enrichment claim is somewhat threadbare, Giles does not challenge the claim on that basis, and the First Amended Complaint elsewhere amplifies sufficient facts to state a plausible claim that Giles inequitably benefited at Plaintiff's expense. *See Beth Israel Med. Ctr.*, 448 F.3d at 586. The single sentence in Giles' footnote asserting that Plaintiff's unjust enrichment claim is time-barred is wholly inadequate to establish that affirmative defense. *Staehr*, 547 F.3d at 425.

As such, Giles' motion to dismiss is denied with respect to Plaintiff's unjust enrichment claim (Claim 3).

### D. Plaintiff States a Claim for an Accounting (Claim 4).

Plaintiff also asserts a claim for equitable relief in the form of "an accounting of royalties due" to Plaintiff as alleged co-author and co-owner of Touch It Or Not and Triple Up. FAC ¶¶ 66–70. Giles seeks to dismiss this claim on the ground that, under New York law, which both parties agree governs the claim, "[t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship." Def. Mem. at 17 (quoting *AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 8, 867 N.Y.S.2d 169 (2008)). Giles asserts that Plaintiff fails to allege that the parties had a fiduciary relationship. *See* Def. Mem. at 18.

Giles is incorrect. Plaintiff alleges that he authored the music for Touch It Or Not and Triple Up and, as such, he and Giles are "co-owners and co-authors" of the songs. FAC ¶¶ 17, 65. The Second Circuit has explained that "authors of a joint work are co-owners" who are "subject to a duty of accounting to" each other. *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007).

As such, Giles' motion to dismiss is denied with respect to Plaintiff's accounting claim (Claim 4).

### E. Plaintiff Fails to State Claims for Infringement of the Two Songs Released in 2017 (Claim 5 and Claim 6).

Plaintiff asserts two separate claims for copyright infringement of two songs, which Plaintiff called Horny Horns and Reflection Eternal, that Giles allegedly released under the names D.I.A. and Uwasntthere in his 2017 album The Program (Claim 5 and Claim 6, respectively). *See* FAC ¶¶ 71–78, 79–86. The parties argue at length about whether Plaintiff is asserting ownership claims disguised as infringement claims and the statute of limitations. *See* Def. Mem. at 5–9; Opp. at 3–9. These arguments are beside the point. As the copyright registrations Plaintiff attached to the First Amended Complaint make clear, Plaintiff is not the copyright holder of either Horny Horns or Reflection Eternal. As such, Plaintiff does not have the right to prosecute an action for copyright infringement of these songs. *See Davis*, 505 F.3d at 99.

While the copyright ownership in a protected work initially vests in the author, *see* 17 U.S.C. § 201(a), such "ownership . . . may be transferred in whole or in part by any means of conveyance or by operation of law," including a written transfer statement. 17 U.S.C. § 201(d). When an author (or other sole owner) of a work transfers his entire ownership interest to another party, that includes "his interest in prosecuting . . . causes of action for infringement" of the work. *Davis*, 505 F.3d at 99. Crucial here, the "the copyright 'claimant' for purposes of copyright registration is the author of the work for which registration is sought *or* a person or organization

that has obtained ownership of *all rights* under the copyright initially belonging to the author." *Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002) (emphasis added) (quoting Interim Regulation: Part 202–Registration of Claims to Copyright, 43 Fed. Reg. 965 (1978)).  In other words, "to be named as a claimant by means of a transfer" on a copyright registration, the person or organization named "must own *all rights* in the work," including the right to prosecute an action for infringement. *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 471 (S.D.N.Y. 2013) (emphasis added) (quoting Help: Copyright Claimant, www.copyright.gov/eco/help-claimant.html).

Plaintiff attaches to the First Amended Complaint the copyright registrations for Horny Horns and Reflection Eternal [ECF Nos. 39-1, 39-2].  Each registration clearly states that Plaintiff is the author of the work, but the copyright claimant is "Hebrew Hustle" [ECF Nos. 39-1, 39-2].  Each registration further states that the transfer of ownership in the work from the author to the claimant was accomplished "[b]y written agreement" [ECF Nos. 39-1, 39-2].  As such, Plaintiff transferred all rights in Horny Horns and Reflection Eternal, including Plaintiff's right to prosecute infringement claims, to Hebrew Hustle.  *See Morris*, 283 F.3d at 506; *Davis*, 505 F.3d at 99.

Hebrew Hustle is not a plaintiff in this action.  It is never even mentioned by name in the First Amended Complaint.  In his pleading, Plaintiff asserts that he "assigned fifty (50) percent of his ownership rights" in the songs "to a third-party publishing company."  FAC ¶¶ 74, 82.  But those assertions are contradicted by the copyright registrations for Horny Horns and Reflection Eternal that Plaintiff attached to his pleading [ECF Nos. 39-1, 39-2].  The Court declines to credit Plaintiff's vague assertions over specific, "documentary evidence" demonstrating that Plaintiff transferred all of his ownership rights to Hebrew Hustle, which is not a plaintiff in this case.  *L-7 Designs, Inc.*, 647 F.3d at 422.

Furthermore, it is too late to add Hebrew Hustle as a plaintiff.  The Court already gave Plaintiff his "last opportunity to amend" to avoid dismissal at the pleading stage [ECF No. 40].  In any event, Plaintiff has not requested leave to amend further.

Accordingly, Plaintiff's claims for copyright infringement of Horny Horns and Reflection Eternal (Claim 5 and Claim 6) are dismissed.

### F.  The Entities Named as Defendants in the Original Complaint

As noted above, the First Amended Complaint, which names Giles as the sole defendant, superseded the Original Complaint, which had also named several entities as defendants.  Indeed, the Original Complaint naming the entities as defendants now has "no legal effect."  *Pettaway*, 955 F.3d at 303.  Nevertheless, for the avoidance of doubt and the sake of good order, IT IS HEREBY ORDERED that by September 26, 2024 Plaintiff shall file a stipulation of voluntary dismissal as to the entities named in the Original Complaint.

### G.  The Motion To Strike Is Denied.

Plaintiff moves to strike Giles' reply brief because it was not timely filed.  Rule 6 of the Federal Rules of Civil Procedure permits a district court to extend an expired deadline "if the party failed to act because of excusable neglect."  *Luo v. Baldwin Union Free Sch. Dist.*, 677 F. App'x 719, 720 (2d Cir. 2017) (quoting Fed. R. Civ. P. 6(b)(1)(B)).  "Excusable neglect is an 'elastic concept.'"  *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, (1993) (quoting 4AC. Wright & A. Miller, Federal Practice and Procedure, § 1165 (2d ed. 1987)).  Here, Giles attempted to file his reply brief by the deadline but made a filing error [ECF No. 49].  He then filed the brief several days late [ECF No. 50].  While Plaintiff complains that Giles added new arguments to the later-filed brief [ECF No. 51], defense counsel represents that he had accidentally attempted to file an incomplete version of the brief when he received the filing error [ECF No. 52].  Striking the submission is too extreme a remedy, and the Court therefore

exercises its discretion to deny the motion to strike and to resolve the parties' arguments on the merits. *See Luo*, 677 F. App'x at 720.

## IV.    CONCLUSION

For the reasons set forth above, the motion of Defendant Cameron Giles to partially dismiss the First Amended Complaint is GRANTED in part and DENIED in part.  Specifically:

- Plaintiff's claim for breach of the alleged 2008 oral agreement with Giles about Touch It Or Not and Triple Up (Claim 1) is dismissed in its entirety.

- The motion to dismiss Plaintiff's claim for breach of the written agreement about Touch It Or Not and Triple Up (Claim 2) is GRANTED with respect to the alleged promise to amend the copyrights for Touch It Or Not and Triple Up and DENIED with respect to any new breaches of the alleged promises to pay Plaintiff royalties and credit him as a producer and songwriter in new distributions of Touch It Or Not and Triple Up within the six years before Plaintiff filed this action.

- The motion to dismiss Plaintiff's claim for unjust enrichment (Claim 4) is DENIED.

- The motion to dismiss Plaintiff's claim for an accounting (Claim 5) is DENIED.

- Plaintiff's claims for copyright infringement of Horny Horns and Reflection Eternal (Claim 5 and Claim 6) and dismissed.

- Defendant did not move to dismiss Claim 7 or Claim 8, which therefore remain in the case.[6]

IT IS FURTHER ORDERED that Plaintiff shall file a stipulation of voluntary dismissal as to the entities named in the Original Complaint by September 26, 2024.

IT IS FURTHER ORDERED that Giles must file an answer within 14 days of this Opinion & Order.

IT IS FURTHER ORDERED that the deadline to complete fact discovery is December 7, 2024.

The Clerk of Court respectfully is requested to terminate the motions at docket entries 43, 51, and 54.

**SO ORDERED.**

**Date:  September 19, 2024
        New York, NY**

**MARY KAY VYSKOCIL
United States District Judge**

---

[6] The Court notes that the copyright registrations for the songs at issue in these claims, like Horny Horns and Reflection Eternal, list Hebrew Hustle as copyright claimant [ECF Nos. 39-3, 39-4].  But Defendant failed to move to dismiss at the pleading stage.